Case number 18-5384, Junith Kerns et al. v. Caterpillar Incorporated. Argument not to exceed 15 minutes per side. Mr. Torres, you may proceed for the appellant. Good morning, and may it please the Court, I'd like to reserve five minutes for rebuttal. Very well. Following the Supreme Court's decisions in Tackett and Reese, this breach of contract case must be resolved using ordinary principles of contract interpretation that the lower court failed to apply. This Court in Fletcher recognized one of those key principles to be a labor contract's general duration clause applies to health care benefits unless it contains clear, affirmative language indicating to the contrary. Viewing all relevant 1998 contract language under all applicable principles shows the lower court erred in finding plaintiffs were entitled to benefits that survived the expiration of the 1998 contract. I'm not sure if Fletcher is the best case for you. I mean, I know that the defendant there conceded the issue, but the Court several times says that language which is virtually identical to the lifetime benefits language here they characterize it as follows. The CBA here explicitly provides for lifetime benefits for surviving spouses and dependents only. Again, based on basically the same language as here. And so the retirees who didn't have that same for life language cannot claim a contractual right to such benefits. So what would you have us do with that sort of thrice repeated remark in Fletcher? Yes, Your Honor. Well, two points. First off, the defendant in Fletcher did not dispute that they had agreed to provide lifetime benefits. I get that, but the Court seemed to very, I mean, more than eagerly embrace that concession. I understand, Your Honor. The other point I would say about Fletcher, though, is that in conceding that they made no arguments regarding the import of the durational clause on that language. So you can certainly look at lifetime in the abstract and say, well, that certainly would suggest that it was intended to survive the expiration. But what Fletcher says is you need something more. You need something that shows that there was an exemption for that language. So the Sprague case, Your Honor, is a good example of a case where there was lifetime language and there was, in that case, a reservation of rights clause, but termination language. Was there durational language discussed in Fletcher? Was that germane to the issue? It was not germane to the issue because what was happening in Fletcher was the retirees were pointing to the spouse language to say there should be an inference of lifetime benefits for us because of this spouse language. And so the court is just looking at the import of that language. The weirdness of having this sort of gap. And there was no discussion about how that lifetime language in Fletcher might look with a durational clause attached to it. So when they said expressly guaranteed for life, is it fair to say, I mean, they're just saying what the clause that provides the benefit says as opposed to whether there's a background general durational thing? Yes, Your Honor. Why are we talking about this case then? I mean, I'm not blaming you for that. I mean, I've been reading it. I mean, the whole struggle in these cases is this collision between temporal language in a benefits provision and a general duration provision that just doesn't seem to fit. And if there is no such collision in Fletcher or it's not even dealing with that collision, I wonder why does Fletcher have anything to do with this? Well, I think the point of Fletcher and Cooper, which it was actually referring back to, was to reiterate the importance of applying durational language to the rest of the contract. That's, in my view, why Fletcher is relevant. The clear rule that it alludes to has to do with what the- You need lifetime language plus something that suggests that you're not subject to the general durational clause. Is that what you're saying? Yes, Your Honor. So it has to be you get these benefits for life regardless of what the duration of the agreement is? That's exactly what this Court said in Cooper, which you need some regardless language or something else that exempts that promise. And that's, again, in the Spray case, this Court specifically addressed that tension. And it specifically said we don't see any ambiguity in a contract that on the one hand tells the individuals- So wouldn't that mean in this case, regardless of what your behavior has been, it meant you get benefits for life until 2004? That's what it would mean? Yes, Your Honor. Does that make any sense? It's a six-year agreement. Why would you even say that? Well, this Court said in Cooper that that can have- in that case, they were looking at until 65 language. But the same point, right, that in the abstract it could be read to extend beyond the term limited agreement. And they said, well, the reason that language is not meaningless is because it tells the parties who are receiving the benefits that as long as you maintain the eligibility criteria during the term of the agreement, you'll continue to receive the benefit. And that's what the Seventh Circuit said in Auburn-Gear. What does that mean? As long as you maintain the criteria, but you're still talking about up until 2004. That's correct. Well, unless the contract is extended. So as plaintiffs point out, I mean, it is certainly possible that this agreement could have been extended beyond its term. It wasn't. Are you talking a 9A extension or the plan being rolled into a new agreement altogether? Well, since they both operate in tandem, the agreement said this is going to expire in 2004 unless the parties agree to extend it. I thought the argument was that Section 5.15 expressly contemplates that the plan could be attached to a future agreement, maybe the one that kicks in after 2004. And so that would perhaps make some sense out of guarantees that seem by their terms to go beyond that. Right. Well, when you agree to the promise, you're saying for the term of this agreement, and that's what Section 5.1 says. It says that we're going to provide these benefits for the duration of the agreement. The agreement by its terms expires April 1, 2004, but it certainly contemplates the possibility of an extension. So the fact that the language might be within a term-limited agreement doesn't render it meaningless. It's telling the recipient. Did you say that 5.15 itself says for the term of this agreement? Yes, Your Honor. So Section 5.1, which is- I'm reading that will be continued following the death of a retired employee for the remainder of a surviving spouse's life without cost. 5.1. 5.1, Your Honor. Not 5.1. So the section providing benefits begins by saying that the benefits under this section will be provided for the duration of the agreement. One of the benefits being provided in that section is the length, Section 5.15, which the plaintiffs rely upon. Am I right that now you've agreed that the people who did become widows during the time of the agreement, you're continuing to provide it for them without cost? We waived the premiums for that population, which is the only thing that's left at issue, yes, Your Honor. So back in 2006- I just want to make that in a sense that's either niceness or grace or litigation strategy. Well, actually, the record shows that the company agreed to actually waive for that population before this lawsuit was filed. It went to the U.S. But I'm saying that the hard line interpretation of the contract would seem to say you shouldn't have to do even that. Yes, Your Honor. I just wanted to understand. That would have ended in 2004 or 2005, right? 2005, Your Honor. But let me ask you one other thing, and maybe you're going to get to this later on. As I read your argument, you might say the hard line or the top line is this thing ends in 2004, they get nothing, anybody else. But then you've got these arguments about caps and about changes and so on. Are those fallbacks if we don't buy the first argument, or are they independent bases? Do they get you less than the top line? Can you help me there? Yes, Your Honor. So I believe that our point is that when you look at the word lifetime in this contract and you try and decide what it means, you have to also apply the durational clauses. You also have to apply the fact that the contract only refers to pensions as being vested. You have to apply the fact that it uses the word continued in providing the benefits, and it also caps these benefits per covered individual. All of those operate to both limit the term of the agreement as well as eliminate the idea that these benefits were without cost, if that helps, Your Honor. Well, I'm not sure because I thought I asked the question as, are these other arguments fallbacks where you get something less than a complete win, or are they simply additional arguments for why you get a complete win and the plaintiffs get nothing? Well, the durational clause, the caps is a fallback as it relates to the cost of the benefits, Your Honor, separate and apart from whether or not these are term-limited agreements. And just in the brief time I have, I just wanted to also briefly refer to what we call the growing class. So for the population that did not become surviving spouses until after this contract expires, we come back again to the Fletcher case. And again, we believe that consistent with this Court's decision in 1-1, this Court in Fletcher recognized that whatever may be said about what was promised to individuals who obtained surviving spouse status during the term of the agreement, the same thing could not be said with respect to individuals who did not attain that status until after the contract expired. So again, whatever one may say about the rights enjoyed by individuals who retired under that contract, we don't believe it's reasonable to extend it to individuals who obtain that status subsequently. Do you think, just real quick, do you think to overcome a general durational provision, does, in your view, does the contract have to say something, not only say something like life or until age 70 or something, but also expressly reference specifically the durational provision? Is that what you think the law is? Because otherwise, for life, one could say itself kind of suggests expressly that the duration provision doesn't apply to this specific point in the contract. Well, Your Honor, I believe that this Court gave some examples in Cooper and Serafino about what language might be appropriate. It seems to me that whatever promise you have, be it lifetime or until 70, there has to be some indication that that benefit was intended to survive the expiration. And the example that they gave in Cooper was whichever is sooner, regardless of whether this agreement expires. And so I do think there has to be some acknowledgment of the durational clause and an exemption from it. I believe that's how this Court articulated it in Fletcher. Okay. Thank you. Have your rebuttal. Good morning. I'm Lisa Smith, Class Counsel here for the Class of Surviving Spouses. I want to point out initially that this Class of Surviving Spouses is defined as the surviving spouses of the retirees who retired during the term of the 1998 agreement, which was on or after March 16, 1998, and before January 10, 2005. Not April 4, 2004. There's a factual difference here in the position of Caterpillar with respect to the position they think that is in the record as to when the time period was that that 1998 agreement actually was in effect through. Thank you. Also, Caterpillar has never taken the position that it will not charge the individuals who were lucky enough to have their retiree die before January 10, 2005. They've been asked that repeatedly. It's in the record. It seems to be a litigation tactic. I understand it. It's a complicated case. I mean, so the sooner we talk about the merits, probably the better. Thank you. Just in terms of saying somebody's engaged in tactics. I mean, you can talk about what you want, but we have a hard issue here. Yes, I was simply trying to get to the point about who was being charged and what was not. And the court had asked that in a question. Here, there are three reasons, I believe, why this 1998 GIP read in conjunction with the insurance plan agreement, the IPA with its Section 9A, here provide for vested lifetime benefits. And it's consistent under Tackett, under Fletcher, under Cooper, under Gallo, and all the cases that are cited in the briefs. First, here we have an express specific durational language for the remainder of his surviving spouse's life without cost, which we submit is unambiguous. It means what it says. The general durational clause here is limited, and it contemplates itself that benefits could continue beyond the term of a lifetime. I mean, it seems to me, just speaking for myself, that the relevant durational clause is not 9A, but instead is 5.1. I understand your point about 9A, and 5.1 is the one you have to wrangle with. Yes, I believe with respect to 5.1, which is in the body of the group insurance plan, that merely provides that these set benefits must be provided during the term of the agreement. I do not think it believes that 5.1 says that they shall not be provided thereafter. I don't know. I mean, it's kind of like kids 12 and under admitted free. It doesn't expressly say you have to pay if you're 13, but most people would read it that way. I don't think that when you read 5.1 in conjunction with 5.15 and 6.2C, that when reviewing that all together, and in particular here, looking at the history of the 1988 contract and how we arrived at this particular language, but just looking within the four corners, as you said, of the 1998 agreement, here, unlike Gallo, we do not have silence as to the duration of these benefits. So I understand if you have silence, if it's ambiguous, Judge Sutton and this Court have told us, and Supreme Court have told us, that if you have silence, you default to the general durational clause. Silence would be, you know, employees shall have benefits under this plan. Benefits shall continue without any other words, exactly. Here we have language that expressly and specifically goes beyond. And I know you've pivoted from the 9A, but I just also wanted to point out that you've got that rollover provision, you've got contingencies in 9A and the IPA, and then you also have that language that specifically states, that contemplates that the bargaining party's intent is that benefits may continue beyond the termination of this agreement. Is that 9A you're talking about? That's 9A to the IPA. And I believe it's also relevant to note that in Sprague, we did not have a claim under the Labor Management Relations Act. Sprague was a case of non-collectively bargained benefits. And I think it's important to note that under ERISA, there was a plan document, right, the writing that sets forth what the terms are of the plan. And in a unilateral issued plan document where you don't have a union, you don't have any issues with respect to collective bargaining, or the federal labor policy that TACIT reinforces when these provisions are interpreted, I think that's another reason why Sprague is different. I mean, you talk about 9A. I mean, 5.1 says that the benefits under this section will continue or be provided, don't let me get that continue word wrong, during the duration of any agreement to which this plan is a part, right? So that means if in 2005 they had a new CBA and the parties decide to make this plan, a part of that agreement, things just continue, correct? If there's no vesting. Well, wait a minute, wait a minute, just, I mean, per these terms, the benefits would just continue, right? It depends on what the parties negotiated in the new agreement. The question I raise is to whom should they be applicable? If I may, if they negotiate attachment, or if they negotiate that this plan is a part of the agreement, then obviously the benefits continue, per this language. I wish to make a distinction between the plan and the plan document, which have separate existence under both LRA and under ERISA. The plan is the plan of benefits that continue. That's a great question for what I really wanted to ask you. So I'll set this aside. Assuming that the benefits do continue, if this plan is made a part of a future agreement, doesn't that answer your question about 9A saying the benefits don't automatically terminate, if the agreement terminates? And the reason they don't automatically terminate is that if the parties choose to add the plan to the next agreement, they continue. And so 9A is holding out the possibility that, indeed, they attach the plan to the next agreement. It's not saying that this entire plan, which would be the implication, I think, of the reading, that this entire plan continues forever. I believe it's the benefits under the plan can continue. Right. And I think it's an important distinction to note to whom each agreement is applicable. Retirees who retired between the 1998 and 2005 date, though their benefits are set forth, and those of if they should have a surviving spouse, are set forth under the 1998 agreement. When the UAW and Caterpillar negotiate the 2005 agreement, that's setting a different set of benefits forward, including the pensions, which will be applicable to a different group of people and may carry over benefits for certain older people as well. So I think it's the applicability part that is also important for that. If I may, in Cooper, Judge Sutton summarized TAC-IT with this view that I think the plaintiffs here would win under. Another way of putting the TAC-IT ordinary rules of contract interpretation is, hey, you have a CBA that has a time limit, the norm is the obligations, and the CBA in both directions end with the time limit. The exception to the norm is when the CBA establishes that something continues beyond. To establish continues beyond, you don't establish it by being ambiguous. If it's ambiguous, you know, the contract period applies. So the CBA applies, that's TAC-IT, everything else is noise. But I understand your point, but until age 65, language would seem to be a tough fact for you in that case, because, you know, legally it seems to be no different than for life in the sense that that language obviously could extend beyond the agreement period, but yet there they said it didn't. I agree that that language sort of amps up this analysis, but I think that this language is much more specific and different. But just to continue with that point, and they added, if you wanted to do that, you would have added this particular language, right? You know, regardless of when the CBA expired. I mean, we suggested what the specific language would be that we would be looking for, and, I mean, I'm not sure, why don't we just go with that? I don't see that in this case. We've said what we're looking for. Why wouldn't that just be the end of it? Well, when the bargaining parties were negotiating this in 1998, and, in fact, when the language first arose in 1992, we didn't have any of this guidance. So if the point of this exercise is to discern the intent of the bargaining parties, I think that the bargaining parties had no idea they would have to be that explicit. I think what they're saying in Cooper is the intent isn't there if this kind of language isn't there. That in 1990, whatever it was, we're saying we don't think they intended that in 1990 given these durational provisions unless they pointed to that provision and said, that doesn't apply to this benefit. I understand that's Caterpillar's position, but I think that's further than the case law requires here. I believe that we don't just have until age 65, but we have will be continued following the death of a retired employee for the remainder of his surviving spouse's life without cost, and then we also have the provision that says benefits may continue after this agreement. This agreement means the benefits and the plan may not necessarily terminate at the end of the expiration date. And note, if Caterpillar's position is that all of these contracts ended on April 4, 2004, why then do we have this distinction in Caterpillar's own language, saying they were going to waive the premium temporarily for the people whose spouses died before the January 10, 2005 date, not a 2004 date? Yeah. So, I mean, under 9A, it says the plan doesn't automatically terminate. Under what circumstance, in your view, would it terminate? General plan. I know you think that these benefits are vested and they go on forever, but 9A refers to the plan generally, right? Yes. And it doesn't automatically terminate. I didn't see in your brief, or at least I don't remember, what circumstance do you think would terminate it? Well, normally what happens is that the bargaining parties notice that their negotiated plans, including the GIP and IPA, would terminate in their negotiating a new agreement or their negotiating amendments or modifications to those agreements. That is generally under labor law, what provides for termination of a specific agreement. But labor law also provides that the employer is obligated to maintain the existing terms and conditions until there have been good faith negotiations. And that gets us into federal labor policy issues, and that the employer cannot make unilateral implementations of changes. So, I mean, to distill it down, what fact has to be present to terminate? Normally it's notice from the bargaining parties under the... Well, that's the way the agreement would terminate. That's what 9A says about this is the way we shut it down. But 9A is saying, but this shutdown by notice doesn't automatically terminate the plan. Correct. I mean, just what fact, what action, not policy, just distill it down to what action has to happen to terminate the plan in your view? First, well, unfortunately that particular phrasing of it I think can lead to a circular issue. Because if we have vesting, right, the UAW doesn't have the status to negotiate changes to past retirees. The whole plan might vest? Is that what you're saying? The whole plan or just these benefits? Oh, I was simply speaking to the health care benefits. I'm not talking about that. I mean, because 9A talks about the whole plan, not just these benefits. Yes. Let's say that these benefits do vest for life. How does 9A, how does the whole plan ever shut down in your view, given that 9A says it doesn't automatically shut down at the end of that CBA? I'm trying to understand the way you understand, your understanding of how these provisions work together. Right. Because they're negotiated benefits, there would be a notice or some sort of action under federal labor law for the benefits to end and the plan itself to end. Okay. I don't think Caterpillar has a unilateral right to do that. I'd also like to point out that to the extent there are arguments about the summary plan descriptions in this case, again, in a bargaining situation, the SPDs are extrinsic evidence. They're not the plan document. I believe that, again, following federal labor policy and applying these traditional principles of contract law here, the specific language in this case is not cookie cutter. It doesn't fit within the types of contracts we've seen in these other cases, Gallo, Fletcher, Cooper, et cetera. I also want to note that Cooper is still pending in the Western District of Michigan. That decision was only based on a preliminary injunction decision. And we have yet to see what the discovery or hearings and trials may lead on that. I understand your point on that, but if you read the decision, what it seems the court is doing there is it says we hold, the Sixth Circuit holds, that this agreement does not provide lifetime benefits for life beyond the end date of the agreement itself. We're holding that. Therefore, we think the plaintiffs are not likely to prevail. So it seems to be an actual holding, just like any other case, as to what the agreement there means. Do you read it differently? Well, I read that it's not a decision on the merits of what the facts are in that case. And I think that each of these cases has to be tied to the specific language. I think this case certainly presents a case of first impression on that. Okay. Well, thank you for your argument, Ms. Smith. We appreciate your rebuttal. I certainly would agree that, with counsel's last point, that you have to look at the language of these agreements. But I also think you have to be mindful of what this court said in Cooper. It said that the remand or the reversal of Reese was a powerful indication that this general duration clause should dictate when the benefits expire unless an alternative date is provided. Neither Reese nor Tackett involves for life language. And if I recall, Tackett expressly says, well, this one doesn't say for life. So why shouldn't we read Tackett to say, okay, this one does? And that is itself kind of a mini-durational provision, which is, I think, their argument. Yes, Your Honor. The interpretive point regarding Tackett was to say, we told you to apply a general duration clause. You didn't do it. No, no. It said there's a background principle of contract law that the contract and obligations end with the contract unless somebody says otherwise. And they said this didn't say for life, for example, so this one did. So why under, you know, why is this, why is Ms. Smith's argument so inconsistent with Tackett? Well, if you look at, again, Sprague, Your Honor, this court reconciled those two concepts, durational language and lifetime promises. It said, this court said, that in that case the benefits were provided for life, provided the company chose not to terminate the plant. That's what the Seventh Circuit said in Auburn Gear. That's what the Third Circuit said after Tackett and Grove. And that's what the Eighth Circuit said in Crown Cork. All those cases involved lifetime language? Lifetime language and duration language, with one exception. Sure, so Sprague actually involved a reservation. Just to make one clear point, Sprague involved a reservation of rights clause, which we would say is a termination provision. Auburn Gear involved lifetime language and duration. Auburn Gear from the Seventh Circuit. Grove from the Third Circuit. And then Crown Cork from the Eighth Circuit. And I'd say that the most explicit discussions of that come in Grove and in Auburn Gear, where they're specifically talking about the reconciliation of lifetime language and, in that case, durational language, in exactly the same way that this court addressed it in Sprague. So I think that, you know, to answer the question, yes, lifetime, certainly in some circumstances, could be viewed as something more than just an eligibility criteria. But I would say that the way it's read here is exactly how it was presented in the cases I just referred to you. With respect to the expiration of the contract, that wasn't argued below, but there's no dispute here that the 98 contract, and in particular the provision that plaintiffs rely upon, was superseded by the 2004 contract. So in Serafino, this court was looking at language that said this contract expires in X date or when the new contract comes into play. And the reason there's a delay, the date reference that counsel refers to, is that what we call the 2004 contract actually had an effective date of January 10, 2005. It's just the nature of contracts, not always bucking up against one another. So there really isn't any ambiguity there. It goes to when the new promise went into effect. As for spread, Your Honor, the Supreme Court twice cited that case with approval. So whether it's a non-collectively bargained case doesn't detract from the force of the interpretation in that case regarding lifetime language and termination language. With respect to the discussion of the time limits in these various agreements, and you were talking about Cooper and referring to H-65, Cooper specifically says whether or not the promise to provide benefits is open-ended or has a specific terminus, you still have to have some exemption from the general duration clause. So I think that that's on all four squares when you're talking about lifetime language. It's an open-ended promise, and I think analytically it's no different than H-65 language. I just also wanted to address... They are different, right? I mean, if you pick a number, 65, or you just say life, I mean, that's the whole Judge Kepledge's question from Tackett. I mean, they seem to suggest that there is something different about saying for life. Like, you really mean this is going to be for life? If you cut it at 65, then it does make sense that maybe if you limited an agreement to six years or something that you would have numbers in there and that you wouldn't intend to give somebody a benefit. Fair point, Your Honor, but I think they're talking about it conceptually. They're talking about the question of whether all of these cases have historically involved this claim that the benefits continued forever. And so when they're talking about lifetime as a... arise around the idea that these benefits were vested, i.e., they were for life. So I don't believe that talking about lifetime as a concept necessarily means that when placed in the particular labor contract with durational language, with only references to vesting, that it necessarily becomes the overriding principle. It seems that one difference between this case and Tackett and Reese is that the benefit itself is provided in duration. Not true in Tackett, not true in Reese, not true under all the yard man stuff. But here we have a benefit whose provision is provided in durational terms. And you know the rule about the more specific provision governs over a more general one. And I think what we have to struggle with in this case is whether this is a mini-durational provision as to this benefit. And it's whether it's, if so, it's more specific than even 5.1. Do you have any thoughts on that? Yes, Your Honor. I think, again, if you look at the cases I mentioned earlier, all of them grapple with that same concept and reconcile and harmonize these provisions. Because that's what this... Yes, Your Honor, and again, another example of that is this Court's decisions in Wood v. Detroit Diesel. There they were harmonizing for-life language with a financial cap. And again, the principle, the operative interpretive principle is that we have to give meaning to the entire contract. And so in that case, they found that the for-life benefit was subject to a financial cap. So all of these cases are taking these concepts and harmonizing them together. They're not giving predominant significance to one versus the other. And I think, particularly in light of Cooper and Fletcher interpretively, the principles they lay out, they're looking for an alternate date regardless of what the benefit is, whether it's open-ended or has a specific date. For those reasons, we'd ask that the court be reversed. Thank you.